UNITED STATES v. RIDLEY et al.
Civ. A. 4718.

United States District Court,
N. D. Georgia, Atlanta Division.
March 20, 1954.

James W. Dorsey, U. S. Atty., Atlanta, Ga., for plaintiff.

Hal Lindsay and M. Neil Andrews, Atlanta, Ga., for defendants.

SLOAN, District Judge.

The United States brings this complaint in equity alleging that the Commissioner of Internal Revenue has made tax assessments against the defendant, Claude Ridley, for the years 1942 through 1951, inclusive, which taxes, penalties and interest amount to $106,-674.37.

Asserting its lien for taxes on described property, the United States alleges that the other named defendants claim liens against or interests in the described property.

Alleging further that the defendant, Claude Ridley, was likely to encumber or transfer the property, the plaintiff prays for a receiver and injunction and that the claims of the defendants be determined and the plaintiff's liens foreclosed.

The defendants make answer. The defendant, Claude Ridley, denies the correctness of the tax assessments; denies fraud or intent to evade the payment of tax and prays that this Court determine the amount of taxes due. The other defendants each assert some claim upon or interest in some of the described

properties and seek a determination thereof.

### Findings of Fact.

The defendants, Claude Ridley and Mrs. Dimple Ridley are husband and wife. They are about forty years of age and were married about twenty years ago and have no children. Neither has any education and can neither read or write. They have lived on a farm all of their lives and have raised some cotton and corn, hay, produced a few chickens and eggs, and sold some milk and butter. So far as can be determined, they never raised in excess of three to four bales of cotton or two to three hundred bushels of corn in any one year. Their marriage apparently took place about 1934, and in 1937 Claude Ridley, together with Nathan Ridley, entered a plea of guilty in the District Court of the United States for the Northern District of Georgia to the offense of possession of 113 gallons of illicit liquor, the containers not having affixed thereto revenue stamps, and it appears that from this time on the defendant, Claude Ridley, was engaged in the illegal liquor traffic, both manufacturing and selling. Though this business may not have been continuous, the evidence not disclosing the facts in this respect, the circumstances indicate a fairly continuous illicit liquor business.

Both Claude Ridley and his wife were frugal to the point of miserliness; had no luxuries of life, and the barest necessities. From the evidence, and from their appearance, it is determined, with reasonable certainty, that they have lived frugally through the years and have spent little for living expenses, the Court being of the opinion, and here finds, that the expenditures of Claude Ridley and his wife, Dimple Ridley, for living expenses during the years 1937, 1938, 1939, 1940, 1941, 1942, 1943, 1944, 1945, 1946, 1947 and 1948 did not exceed the sum of $1,000 per year, and that during the years 1949, 1950 and 1951 that said expenditures did not exceed the sum of $1,500 per year.

Claude Ridley and his wife saved their money and some years later purchased a small farm upon which there was situated a residence and a small store building, the same containing fifteen to twenty acres of land. This farm apparently was placed in the name of the wife, Dimple Ridley, and for many years they have lived on this farm and have operated the country store, selling groceries and gasoline. No records were kept of the amount of income or of the business transacted, and it is impossible to determine accurately the amount of income received by Claude Ridley, nor is it possible to determine accurately the years in which the income was received. It does appear, and the Court finds, that during the years 1942 through 1951, the defendant, Claude Ridley, and his wife, Dimple Ridley, purchased United States Savings Bonds in the sum of $98,550; real estate in the sum of $23,030.50; an automobile-truck $1425; spent for building materials and for the improvement of real estate, $2,199.83; deposited $1,308 in cash in the bank; expended $1,750 in the construction of a grist mill building; all of such purchases and expenditures were made from taxable income received by Claude Ridley during the years 1937 through 1951, inclusive.

In 1952 a special agent of the Internal Revenue Service, United States Department of Internal Revenue, commenced an investigation of the tax liability of Claude Ridley, and finding that no records had been kept by Claude Ridley, and that it was impossible to determine his income with accuracy since no records were kept, said special agent began the investigation by talking with the taxpayer, examining the public records of Murray and Whitfield counties, examining the bank records and the bond purchases by the said Claude Ridley, and determined that the best method by which to compute the taxable income of Claude Ridley would be the net worth and non-deductible expenditures method and accordingly the investigator adopted that method of determining the income and computing the tax, and in so doing, the special agent determined the year that the purchases were made and the

year that the other expenditures were made and charged said amounts as income in the year in which the purchases or expenditures were made. The special agent testifying that he was unable to find money or property belonging to Claude Ridley prior to 1942, fixed as the opening net worth as of December 31, 1941, nothing, and although he determined from investigation that the said Claude Ridley did in January, 1942, purchase United States Government Bonds in the sum of $7,500, he charged the said sum of $7,500 as having been earned and received by the said Claude Ridley in the year 1942, and taxable as such.

The method used by the special investigator for determining the time that income was received by Claude Ridley was based entirely upon the time of the purchase or expenditure, and this has resulted in a great difference in the taxes assessed in the various years. For instance, for 1942 a tax of $2,584, besides interest and penalties is assessed, while in the year 1943, a tax of $181.28 is assessed. In 1947 a tax of $15,277.54 is assessed, while in 1948 a tax of $483 is assessed, the amount of income allocated in each year being based entirely upon the amount of the purchases or expenditures in that year.

There is in evidence the positive testimony of Claude Ridley and his wife that their earnings were about equal in each of the years. There is no evidence of greater income in one year than in another (except the date of the expenditures).

From and including the year 1937, the first year that the evidence shows Claude Ridley to have been in the illicit liquor business, his sources of income were substantially the same from 1937 through 1951, inclusive, said sources of income being: (1) From the illicit liquor business; (2) the farming operations, and (3) the country store and filling station.

It appears without dispute that Claude Ridley did not deposit his money in banks but kept it in cash, all payments for bonds and real estate being made in cash. It appears that on one occasion that he carried from $6,000 to $6,500 in coins to the bank for the purchase of bonds and that the coins had been buried for so long that they were in bad shape, rusted and corroded.

During the ten year period from 1942 through 1951, inclusive, Claude Ridley made expenditures for investment of approximately $120,000, while during the same period only $1308 was deposited in any bank.

These circumstances corroborating the testimony of the taxpayer as to receipt of income, in the opinion of the Court, entitles the testimony of the taxpayer to credit. Furthermore, in the absence of proof to the contrary, it is more logical and reasonable to believe that the income received was in substantially equal amounts in each of the years from 1937 through 1951, inclusive. The evidence preponderates to this theory. From the evidence it is not clear just how much money was expended in the purchase of United States Government Bonds. However, looking to the defendants' answer to the amended complaint, it appears from paragraphs 5 and 6 thereof that the defendants admit purchasing said bonds at a cost of $102,300, while it appears from the original complaint that of said sum $3,750 of said bonds were redeemed, so that the expenditures for the purchase of United States Government Bonds, for tax purposes, would be $98,550. The Court therefore finds that the total income of Claude Ridley for the years 1937 through 1951 was as follows:

Purchases, deposits and expenditures 1942 through 1951, inclusive:

| | |
|---|---|
| Savings Bonds | $ 98,550.00 |
| Realty Purchased | 23,030.50 |
| Improvements on Rogers Subdivision Property | 2,179.83 |
| ½ Cost of Grist Mill | 1,750.00 |
| Automobile Truck | 1,425.00 |
| Bank Deposits | 1,308.00 |
| Total Expenditures | $128,243.33 |

This makes a total income, except for living expenses, of $128,243.33, which income, under the findings here made, will be divided equally over the fifteen year period from 1937 through 1951, inclusive, which will give to Claude Ridley an opening net worth as of December 31, 1941 of $42,414.44, which, is one-third of the total income shown by these expenditures.

For the years 1942 through 1948, inclusive, there will be added the sum of $1,000 per year as income expended for living expenses, and for the years 1949 through 1951, inclusive, there will be added the sum of $1,500 as income expended for living expenses, in accordance with the findings here made. Thus, the Court finds that the taxable income of Claude Ridley for each of the years from 1942 through 1951, inclusive, is as follows:

| | |
|---|---:|
| 1942 | $ 9,549.56 |
| 1943 | 9,549.56 |
| 1944 | 9,549.56 |
| 1945 | 9,549.56 |
| 1946 | 9,549.56 |
| 1947 | 9,549.56 |
| 1948 | 9,549.56 |
| 1949 | 10,049.56 |
| 1950 | 10,049.56 |
| 1951 | 10,049.56 |

During the years 1937 through 1951, inclusive, the defendant, Claude Ridley, was engaged in the business of farming, operating a country store and filling station, and of manufacturing and selling illicit whiskey. In each of these endeavors he was aided and assisted by his wife, Dimple Ridley, and he derived income from each of these sources.

Claude Ridley made purchases with the aforesaid income of the following series "E," "F," and "G" Savings Bonds issued in the names of the respective payees and beneficiaries on the dates and in the face amounts, as follows:

| | |
|---|---:|
| Mr. Claude Ridley, P. O. D., Mrs. Dimple Ridley Bought February, 1944 "E" Bonds | $5,000.00 |
| Claude Ridley, P. O. D., to Mrs. Dimple Gray Ridley Bought August, 1944 "F" Bonds | $10,000.00 |
| To Mrs. Dimple Ridley or Claude Ridley Bought January 4, 1945 "E" Bonds | $5,000.00 |
| To Claude Ridley or Mrs. Dimple G. Ridley Bought January 4, 1945 "E" Bonds | $5,000.00 |
| Claude Ridley Bought May, 1945 "F" Bonds | $10,000.00 |
| To Claude Ridley or Mrs. Dimple Ridley Bought January 14, 1946 "E" Bonds | $5,000.00 |
| To Mrs. Dimple Ridley or Claude Ridley Bought January 14, 1946 "E" Bonds | $5,000.00 |
| Mrs. Dimple Ridley or Mr. Claude Ridley Bought April, 1946 "G" Bonds | $5,000.00 |
| Mr. Claude Ridley or Mrs. Dimple Ridley Bought April, 1946 "G" Bonds | $5,000.00 |
| Mrs. Dimple Gray Ridley or Mr. Claude Ridley January 2, 1947 "E" Bonds | $5,000.00 |
| Mr. Claude Ridley or Mrs. Dimple Gray Ridley January 2, 1947 "E" Bonds | $5,000.00 |
| Mrs. Dimple Gray Ridley or Claude Ridley Bought February, 1947 "G" Bonds | $5,000.00 |
| Claude Ridley or Mrs. Dimple Gray Ridley Bought 1947 "G" Bonds | $5,000.00 |
| To Claude Ridley or Mrs. Dimple G. Ridley Bought September, 1947 "G" Bonds | $5,000.00 |
| Mrs. Dimple G. Ridley or Claude Ridley Bought September, 1947 "G" Bonds | $5,000.00 |
| Claude Ridley or Mrs. Dimple G. Ridley Bought April, 1949 "G" Bonds | $10,000.00 |
| Claude E. Ridley or Mrs. Dimple G. Ridley Bought February, 1950 "G" Bonds | $10,000.00 |

On the 6th day of April, 1951, Claude Ridley purchased from Waco Byers, Hattie Byers and John Byers 199 acres of land in Murray County, Georgia, paying therefor the sum of $10,557, and shortly thereafter, Claude Ridley agreed

with his brother, W. A. Ridley, and his nephew, L. B. Ridley, that if the said W. A. Ridley and L. B. Ridley would go in there and "clean up" the farm that he would give them a half interest in the same. W. A. Ridley and L. B. Ridley agreed to this but didn't do much on it during the year 1951, but during the years 1952 and 1953 they spent some two to three hundred man hours working on the farm and cleaning it up; they have a bulldozer there that would normally rent for about $14 an hour and have used the bulldozer to clear up about fifty acres of land and to clean up around the edges of fields already cleared; they have not completed their cleaning up but intend to do so in the future. The agreement between Claude Ridley and W. A. Ridley and L. B. Ridley with respect to this was an oral agreement; there was no definite agreement as to just what the cleaning up would consist of; how much work was to be done, or when it was to be done, nor does it appear how much has been completed or how much remains to be completed in the future. The Government's claim of lien was recorded in Murray County on November 24, 1952.

On the 2nd day of October, 1950, Claude Ridley purchased 46 lots of land in what is known as the Albert Rogers Subdivision in Whitfield County, Georgia for $4,963.50 and thereafter L. B. Ridley and W. A. Ridley furnished materials and performed labor in erecting two houses on said lots under an agreement with Claude Ridley that they were to be paid when the houses were sold; the said Claude Ridley now owes L. B. Ridley and W. A. Ridley approximately $700 for such labor and materials. The contract of employment for the building of the houses was not in writing, nor does the evidence show when the buildings were completed. Claude Ridley received during the period from January 1, 1942 through and including the year 1951, taxable income in the amount of $98,550; never filed any tax returns;

kept no records of income; refused to cooperate with the agents of the Internal Revenue Department when they undertook to investigate his income.

The taxpayer offers no reasonable explanation of his failure to file returns, and the Court finds as a matter of fact that the defendant is guilty of fraud with the intent to evade the payment of income taxes due. The Court further finds that the said Claude Ridley failed to file any declaration of estimated taxes and failed to pay the taxes due.

### Conclusions of Law.

■ The authority granted to the Commissioner of Internal Revenue where records are not kept by the taxpayer to use such method of computing his taxable income as would clearly reflect his income, 26 U.S.C.A. § 41, is nothing more than the grant of authority to the Commissioner to use indirect or circumstantial evidence where direct evidence such as records can not be obtained. The net worth and expenditures method adopted by the Commissioner through the agent in this case is simply the exercise of the authority to use circumstantial evidence in computing the taxpayer's taxable income.

■ The determination of the Commissioner, as evidenced by the assessment of the tax, is not conclusive but only furnishes prima facie evidence of its correctness [1], and where, as here, the United States files its complaint in equity seeking to foreclose its lien for taxes, and asking this Court to direct all persons having liens or claiming interests in the property be brought into Court, and that the merits of their claims be determined, seeking a receiver and injunctive relief, and where the defendant taxpayer denies that he owes the taxes so assessed and avers that the tax assessments are erroneous, and introduces evidence both direct and circumstantial, which if fully credited would require the Court to determine that the deficiency tax assessments made

by the Commissioner of Internal Revenue are incorrect, and to determine anew the taxpayer's tax liability, the Court is free to determine for itself from all of the evidence in the case just what the taxpayer's liability is, and where, as here, the only circumstantial evidence before the Commissioner was the fact that the taxpayer made certain expenditures, mostly in the nature of investments, and where those facts are likewise before the Court, with other evidence in addition thereto, this Court is free to weigh all of the evidence and to reach a conclusion different from that of the Commissioner.

In this case the taxpayer, Claude Ridley, failed to keep records as required by law[2], and the Commissioner of Internal Revenue had the right to use such method of computing his taxable income as in his opinion would clearly reflect the income[3], and the Commissioner chose the net worth method of computing income. This method at best is subject to the criticism that when heedlessly resorted to and loosely applied, it is dangerous and inexorable. In all cases, civil and criminal, it should be used with the utmost caution to avoid injustice to honest taxpayers which might otherwise result. This, however, does not incapacitate it as an instrument of evidential value in cases where it may be properly applied. When a taxpayer violates the mandate of the statute which requires him to keep proper records of his income, and conditions are otherwise such that his taxable income may be determined in retrospect only by resort to circumstantial evidence of this character, he will not be permitted to rely upon his ability to conceal the distorted facts of income and his fraudulent conduct to avoid the imposition of taxes which the collection authorities may show to be lawfully due[4].

This Court is of the opinion that under the facts of this case that the use of the net worth and expenditures method of determining the income is justified. However, the Court is of the further opinion that this method has been "too loosely applied" in the following particulars:

1. The circumstances show that the opening net worth as of December 31, 1941 should have been at least $42,414.-44, the amount of that portion of the total income received prior to January 1, 1942.

2. That the higher estimate of the agent as to the amount of expenditures for living expenses must yield to the evidence and strong corroborating circumstances, and such expenditures should be fixed as set forth in the Court's findings.

3. That the allocation of income by the agent as being in the years that the investment expenditures took place is a loose application of the net worth-expenditures method of determining income and is not supported by any other fact or circumstances, while the oral testimony, as well as other circumstances, indicate that such investment purchases were made from accumulated savings rather than from current income, and there is no other evidence to indicate great income in one year and little income in another. The income should be distributed evenly over the years 1937 through 1951, inclusive, in accordance with the foregoing findings of fact.

W. A. Ridley and L. B. Ridley claim an interest in the 199 acre farm bought by Claude Ridley from the Byers. The basis of this claim is an oral contract that they were to have a one-half interest in the farm if they would "clean it up." They claim that they have done much work on it during 1952 and 1953, but that the work has not been completed. In order for this promise, for the sale of an interest in lands, to be binding upon the obligor, it must be in writing[5]. Although the Georgia Code provides that this requirement shall not extend to cases where there has been

---

2. 26 U.S.C.A. § 54(a).

3. 26 U.S.C.A. § 41.

4. Bryan v. C. I. R., 5 Cir., 209 F.2d 822.

5. Ga.Code, § 20–401.

such part performance of the contract as would render it a fraud of the party refusing to comply if the Court did not compel a performance[6], the contract here is too vague and uncertain to be capable of enforcement[7]. The contract has not yet been completed, and though W. A. Ridley and L. B. Ridley may have a valid claim against Claude Ridley for the value of the work done, they have not acquired any interest in the land, equitable or otherwise.

W. A. Ridley and L. B. Ridley also claim an interest in two certain houses and lots in the Albert Rogers Subdivision, the basis of this claim being an alleged oral agreement with Claude Ridley that they would furnish the labor and material and construct upon the described two lots two houses, Claude Ridley agreeing to reimburse them when the property was sold. A balance of approximately $700 is now due them.

Under the facts as contended for by said claimants, they have neither a lien upon nor an interest in the described property.

While the Georgia law provides that a laborer[8], or a materialman[9] may acquire a lien where labor is performed and material is furnished in improving real estate, by complying with the requirements of the statutes as to the filing and recording of the notices of claim of lien within the time prescribed, there is no evidence here that such liens have been obtained. The claim of lien or interest in the property of W. A. Ridley and L. B. Ridley for the construction of the two houses is denied.

The defendants contend that to subject the interest of Claude Ridley in the joint ownership bonds would affect the right of survivorship. This has been decided contrary to the contentions of the defendants.

"The incidence of the bonds here in question, as governed by the regulations in respect to their issue, is that while there is preserved the right of survivorship, that right is preserved only when co-ownership is not otherwise terminated under the circumstances recognized by the regulations. The present bonds within certain limitations may be reached by creditors for the debts of a co-owner. * * * When subjected to process by creditors, there is recognition of the extent of interest therein of each of the respective co-owners." Guldager v. United States, 6 Cir., 204 F.2d 487, 489.

The Court finds that the bonds, as detailed in the findings of fact, purchased in May, 1945 and registered in the name of Claude Ridley only, as prescribed by Title 31, Code of Federal Regulations, Sec. 315.4, are the sole property of Claude Ridley in accordance with section 315.2 of said regulations.

In the list of bonds as set out in the findings of fact, the Court finds that where the bonds were registered in co-ownership as prescribed by Title 31 of the Code of Federal Regulations, Section 315.4(2), the Court finds that pursuant to Section 315.13(c), that Mrs. Dimple Ridley is the owner of a one-half interest in such bonds and the taxpayer, Claude Ridley, owns a one-half interest in such bonds.

In the list of bonds as set out in the findings of fact, where the bonds are registered in the beneficiary form— Claude Ridley, P. O. D., Mrs. Dimple Ridley, or, Claude Ridley, P. O. D., Mrs. Dimple Gray Ridley, the Court finds in accordance with Title 31, of the Code of Federal Regulations, Sec. 315.13(c), that Claude Ridley is the owner of such bonds as set forth in sections 315.4(3) and 315.46 of said regulations.

---

6. Ga.Code, § 20–402.

7. Prior v. Hilton & Dodge Lumber Co., 141 Ga. 117, 119, 80 S.E. 559.

8. Ga.Code, § 67–1801 et seq. (Laborer's Liens).

9. Ga.Code, § 67–2002 et seq. (Materialmen's Lien).

Among the penalties or additions to the tax made by the Commissioner, are the following:

10% of the tax for failure to file a declaration or pay the installment of estimated tax as provided by section 294(d) (1) of Title 26, U.S.C.A.

6% of the amount by which the tax exceeds estimate (total tax here) for substantial underestimate of estimated tax as provided by Section 294(d) (2) of Title 26, U.S.C.A.

The addition of 10% of the tax for failure to file the declaration or to pay the installment of the estimated tax is proper to be added in the applicable years. However, the addition of 6% for substantial underestimate of estimated tax is improper for the very obvious reason that the tax was not underestimated, indeed, the taxpayer filed no declaration of estimated tax at all and suffers the greater sanction of 10% addition to the tax for the failure, and the failure to pay the tax.

The argument of the Government that the failure to file the declaration of estimated tax is in effect a declaration of no tax, thus subjecting the taxpayer to this penalty, is rejected as contrary to a proper construction of the statutes.

The tax will be computed in accordance with the findings here made. Interest and additions to tax as computed will be made in the manner applied by the agent, except the addition of 6% for substantial underestimate shall not be added.

No evidence showing the necessity for a receiver or injunction was offered, and no necessity therefor appears.

The lien of the United States for taxes here found to be due attaches to all of the property of Claude Ridley and the prayer of the United States for foreclosure is granted.

A judgment for the taxes, penalties and interest, computed in accordance with these findings and conclusions, may be prepared and presented.