ADELL D. COX AND MARY T. COX, PETITIONERS *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 5761–66.   Filed September 24, 1970.

Adell D. Cox, pro se.
*Robert S. Leigh* and *F. Timothy Nichols,* for the respondent.

1738

OPINION

In the petition, petitioner asserts that assessment and collection of the deficiencies and additions to tax for 10 of the years involved are barred by the statute of limitations. Section 276(a) of the Internal Revenue Code of 1939 [1] and section 6501(c)(3) of the Internal Revenue Code of 1954 [2] both provide that the tax may be assessed, or a proceeding in court for the collection thereof may be begun without assessment, at any time where there has been a failure to file a return. For the taxable years 1951 through 1963, petitioner failed to file any tax returns. Clearly, assessment and collection of any taxes due for the years in question are not barred by the statute of limitations.

In computing petitioner's adjusted gross income, the respondent employed the increase in net worth plus nondeductible expenditures method. He calculated the increase which had occurred over the period January 1, 1951, through December 31, 1963, and allocated such increase equally over each of the 13 years in question. He then added petitioner's annual living expenses to arrive at adjusted gross income.

---

[1] Sec. 276(a) of the Internal Revenue Code of 1939 provides as follows:

(a) FALSE RETURN OR NO RETURN.—In the case * * * of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

[2] Sec. 6501(c)(3) of the Internal Revenue Code of 1954 provides as follows:

(3) NO RETURN.—In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

Petitioner does not question the propriety of using the net worth method. He also concedes that he had no net worth at January 1, 1951, that he owned the assets which the respondent listed as of December 31, 1963, that the respondent correctly determined his liabilities as of that date, and that in the various years he had personal and living expenses in the amounts determined by the respondent. However, he objects to the respondent's application of the net worth method in certain respects.

Petitioner objects to the respondent's use of cost of assets, rather than market value thereof, in computing his closing net worth as of December 31, 1963. It is apparent that the petitioner does not fully understand the underlying rationale of the net worth method,[3] which is that amounts expended in the taxable period, including amounts expended to acquire assets, are to be considered income of such period unless such amounts were on hand at the beginning of the period or represented nontaxable receipts such as gifts or inheritances. Obviously, the *value* of the assets at the end of the period is immaterial since it has no bearing upon the amount expended during the period to acquire the assets. Accordingly, petitioner's assertion that market value should have been used is without merit.

Petitioner also contends that the respondent erroneously included in the cost of farm equipment on hand at December 31, 1963, amounts representing deductible sales taxes and insurance costs. He testified that some of the cost figures that he supplied to respondent included such amounts. However, he did not testify as to what these amounts were or which costs used by respondent included such amounts. Furthermore, on his return for the taxable year 1964 the petitioner used, as a basis for calculating the allowable depreciation, the same costs of farm equipment as were used by the respondent in the net worth computation. Under the circumstances, for failure on the part of the petitioner to show error in specific costs used by the respondent, we are not in a position to disturb the respondent's determinations in this respect.

Petitioner further contends that the respondent erred in calculating the increase in net worth over the full 13-year period and in allocating such increase equally over each year in such period. He points out that the farm equipment which was included in the net worth computation as of December 31, 1963, at a cost of $36,095.50 was bought commencing in 1958, and that in 1958 he began to farm on a larger scale. He

---

[3] On brief petitioner states in part:

"In the 4 years this case has been in dispute, has given me a chance to partially understand the issues. It seems to me that a net worth audit is summing everything up to date and yet machinery which is an expense was said to be a profit. IRS's claim is on an expense instead of a profit."

therefore contends that the increase in his net worth, and hence his taxable income, was greater in the years 1958 to 1963 than in the earlier years. Obviously it would be preferable, in the interest of accuracy, to compute the increase in net worth by use of opening and closing net worth for each year. However, petitioner concedes that his net worth cannot be determined as of the beginning or end of any particular year in the 13-year period except the opening net worth at January 1, 1951, and the closing net worth at December 31, 1963. The respondent commenced the net worth computation as of January 1, 1951, because that was the year the petitioner commenced the farming operations which accounted for all his income and increase in net worth over the years, and because the petitioner advised the respondent that he had no net worth at January 1, 1951. The petitioner has not adduced evidence to show that he did not have sufficient taxable income in the early years to give rise to tax liabilities. Indeed he concedes that he expended about $1,450 in each of the early years for personal and living expenses and that this was derived from his farming operations. From his testimony we also gather that he purchased some farm equipment in the early years. Under the circumstances, we fail to see how the respondent had any alternative to computing the increase in net worth for the years in question in the manner in which he did. Of course, it is obvious that the petitioner's net worth did not increase in precisely the same amount in each of the years over the 13-year period and it may be, although on this record we cannot so find, that there were greater increases in the later years. In this connection, it should be pointed out that there is no way of knowing precisely in which of the years the petitioner accumulated funds which he expended, including payments on the various assets which he purchased. The record shows that the respondent's agents had several conferences with the petitioner and attempted to obtain any information which might protect the interest of the petitioner. We feel that the respondent did the best that he could under the circumstances, and in the absence of proof by the petitioner of a more precise method of allocating the increase in net worth we are constrained to approve the respondent's allocation. See *Estate of W. D. Bartlett*, 22 T.C. 1228. Cf. *United States* v. *Ridley*, (N.D.Ga.) 120 F. Supp. 530. And it may be added that we have no reason to believe that in the final analysis the method of allocation employed by the respondent reaches an inequitable result from the standpoint of the petitioner.[4]

Petitioner's final objection to respondent's application of the net worth method concerns respondent's use of the straight-line method of calculating the depreciation sustained on petitioner's farm equip-

---

[4] See *Estate of John H. Engwall*, T.C. Memo. 1956–6.

ment. He contends that the declining-balance method should have been used, which would have been to his advantage.[5] The respondent contends, among other things, that the petitioners elected to use the straight-line method and may not now change the method since respondent's consent was not requested or granted.

Under the circumstances here presented, we think the respondent's action must be sustained. Prior to the taxable year 1964, the petitioners had not filed any returns and hence had not theretofore adopted any method for computing depreciation on the farm equipment. In this situation the respondent in his initial approach might have employed the declining-balance method, which would have reduced petitioners' tax liability for the years in question, although we have some question as to whether it would have been appropriate for him to have done so in the absence of an indication by petitioners that they wished to adopt such method. However, we do not think the respondent was required to use such method in his initial computations since the petitioners had not elected such method. By the time the respondent issued the notice of deficiency for the years in question the petitioners had filed an income tax return for the taxable year 1964 in which were listed all the farm equipment that the respondent had used in the net worth computation and depreciation on such assets was claimed on the straight-line method. Therein, consistently, the amount stated as prior years' depreciation was computed on the straight-line method, the amount being $14,347.87 which is almost exactly the amount which the respondent had allowed as a depreciation reserve in the net worth computation. It is our conclusion that by signing and filing such return the petitioners thus effectively elected the straight-line method for depreciating such assets for all years, and that they may not now employ the declining-balance or any other method for the years in question. See the Income Tax Regs., pertinent portions of which are

---

[5] Sec. 167 of the Internal Revenue Code of 1954 provides in part as follows:

SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
(1) of property used in the trade or business, or
(2) of property held for the production of income.

(b) USE OF CERTAIN METHODS AND RATES.—For taxable years ending after December 31, 1953, the term "reasonable allowance" as used in subsection (a) shall include (but shall not be limited to) an allowance computed in accordance with regulations prescribed by the Secretary or his delegate, under any of the following methods:
(1) the straight line method.
(2) the declining balance method, using a rate not exceeding twice the rate which would have been used had the annual allowance been computed under the method described in paragraph (1),
(3) the sum of the years-digits method, and
(4) any other consistent method * * *

set forth in the margin.[6] See *Henry M. Rodney*, 53 T.C. 287, and cases cited therein.

In the petition the petitioners put in issue the action of the respondent in determining additions to tax under section 291(a) of the Internal Revenue Code of 1939 and section 6651(a) of the Internal Revenue Code of 1954 for failure to file returns within the time prescribed by law. Those sections provide for such additions to tax "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." The petitioners were required to file returns for each of the years in question under section 51(a) of the Internal Revenue Code of 1939 and section 6012(a) of the Internal Revenue Code of 1954 since they had gross income of $600 or more in each year. On brief the petitioners do not present any argument upon the issue. The petitioner testified that at the beginning his failure to file a return was due to the fact that he could not himself prepare a return and could not afford to pay someone else to do it for him, and that after once having failed to file he did not file returns for subsequent years because he was afraid he would get into a lot of trouble. In a statement given to agents of the respondent he also stated that he had not filed returns because he owed so much money that he did not think he made enough to file returns. These reasons advanced by the petitioner do not constitute reasonable cause for failure to file. See *Genevra Heman*, 32 T.C. 479, affd. (C.A. 8) 283 F. 2d 227. We have accordingly concluded and have found as a fact that for each of the years in question the petitioners' failure to file a return was not due to reasonable cause. The respondent's determination of the additions to tax is approved.

In the petition the petitioners also put in issue the action of the respondent in determining additions to tax under section 293(a) of the Internal Revenue Code of 1939 and section 6653(a) of the 1954 Code. Such sections provide that if any part of any deficiency or underpayment of tax is due to negligence or intentional disregard of rules and regulations, an additional amount of 5 percent of the total amount of the deficiency or underpayment shall be assessed, collected, and paid. Here again the petitioners have not on brief presented any argu-

---

[6] Sec. 1.167(c)-1, Income Tax Regs., provides in part as follows:

(c) *Election to use methods.* Subject to the limitations set forth in paragraph (a) of this section, the methods of computing the allowance for depreciation specified in section 167(b)(2), (3), and (4) may be adopted without permission and no formal election is required. In order for a taxpayer to elect to use these methods for any property described in paragraph (a) of this section, he need only compute depreciation thereon under any of these methods for any taxable year ending after December 31, 1953, in which the property may first be depreciated by him. * * *

Sec. 1.167(e)-1, Income Tax Regs., provides in part as follows:

*In general.* Any change in the method of computing the depreciation allowances with respect to a particular account is a change in method of accounting, and such a change will be permitted only with the consent of the Commissioner, except that certain changes to the straight line method shall be permitted without consent * * *.

ment. Based upon the record as a whole, and particularly the fact that the petitioner did not keep adequate records for the computation of his tax liability, as required by section 54(a) of the Internal Revenue Code of 1939 and section 6001 of the Internal Revenue Code of 1954, and regulations thereunder, it is our conclusion, and we have found as a fact, that some part of the deficiency for each of the years 1951 through 1953, and some part of the underpayment of tax for the years 1954 through 1963, is due to negligence or to intentional disregard of rules and regulations. See *H. A. Hurley*, 22 T.C. 1256, affd. (C.A. 6) 233 F. 2d 177. Accordingly, these additions to tax are approved.

*Decision will be entered for the respondent.*