T.C. Memo. 2013-75

UNITED STATES TAX COURT

STEVEN D. COX, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26960-11.            Filed March 12, 2013.

Steven D. Cox, pro se.

<u>Brianna B. Taylor</u> and <u>Peter T. McCary</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  In a notice of deficiency issued to petitioner on August 26, 2011, respondent determined deficiencies in petitioner's Federal income tax of $48,946 and $6,522 for 2004 and 2005, respectively, and additions to tax under

[*2] sections 6651(a)(1)[1] and (2) and 6654 for 2004 and 2005. The issues for decision are: (1) whether petitioner failed to report gross receipts of $155,227 and $28,815 on Schedules C, Profit or Loss From Business, for 2004 and 2005, respectively; (2) whether petitioner received interest income of $289 and $208 for 2004 and 2005, respectively; (3) whether petitioner is entitled to business expense deductions for the years in issue; and (4) whether petitioner is liable for the additions to tax as determined by respondent for the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts are incorporated herein by this reference. Petitioner resided in Georgia when he filed his petition.

I.      Petitioner's Background and Businesses

After graduating from high school petitioner began working as a carpenter. He eventually applied for a general contractor's license. After receiving his general contractor's license petitioner began working as a "qualifier" by allowing construction businesses to use his general contractor's license. During the years in

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts have been rounded to the nearest dollar.

[*3] issue petitioner received payment for his qualifier services from various construction businesses, including Puente Contracting, Inc. (Puente Contracting), Harrington Homes Corp. (Harrington Homes), MCB Shell Contractor, MCB Framing, and Marco Custom Builder.

During the years in issue petitioner also worked on smaller construction projects. He provided construction services for individuals and for Creative Coast Builders.

II.    Petitioner's Bank Accounts[2]

A.    AmSouth Account

During 2004 and 2005 petitioner maintained an account at AmSouth Bank titled in the name of Equity Three Enterprises (AmSouth account).[3] On the account package agreement he identified Equity Three Enterprises as a sole

---

[2]The record contains copies of AmSouth bank account statements purportedly related to petitioner's business activities: (1) an account titled in the name of Equity Three Enterprises, Inc.; (2) an account titled in the name of Equity Three Partners, Inc.; and (3) two accounts, both titled in the name of Elkcam Construction, Inc. Respondent did not include in petitioner's gross receipts any amounts deposited into these accounts.

[3]During the years at issue Equity Three Enterprises also maintained a bank account at Bank of America. The record does not contain any bank account statements with respect to this account.

**[*4]** proprietorship business. Petitioner was the only individual with signatory authority over the AmSouth account.

During 2004 petitioner made deposits into the AmSouth account totaling $147,131. The deposits included checks drawn on accounts of petitioner, Puente Contracting, Cheryl N. Lee, and Harrington Homes, as well as a check drawn on Equity Three Enterprises' Bank of America account and made payable to petitioner.

During 2005 petitioner made deposits into the AmSouth account totaling $15,404. The deposits included checks drawn on accounts of Puente Contracting, UNITRIN direct, and Marco Custom Builders.

### B. Suncoast Account

During the years in issue petitioner maintained a personal checking and savings account at Suncoast Schools Credit Union (Suncoast account). He was the only individual with signatory authority over the Suncoast account. During the years in issue petitioner earned interest on the funds in his Suncoast account.

During 2004 petitioner made deposits into the Suncoast account of $73,700. The deposits included checks drawn on accounts of Equity Three Enterprises, MCB Framing, Marco Custom Builders, Inc., MCB Shell Contractor, and Creative Coast Builders, as well as a $30,000 wire transfer from Wells Fargo.

[*5]   During 2005 petitioner made deposits of $63,106 into the Suncoast account. The deposits included checks drawn on the accounts of MCB Shell Contractor, Creative Coast Builders, Martha Mejia Masonry, Marco Custom Builder, and Maureen McCormick.[4]

III.   Reconstruction of Petitioner's Income and the Notice of Deficiency

Petitioner failed to file Federal income tax returns for 2004 and 2005. Respondent subsequently performed a bank deposits analysis with respect to petitioner's 2004 and 2005 taxable years.  Respondent determined that petitioner made taxable deposits into his AmSouth account of $144,531 and $11,315 for 2004 and 2005, respectively, and made taxable deposits into his Suncoast account of $10,696 and $17,500 for 2004 and 2005, respectively.  Accordingly, respondent determined that petitioner made total taxable deposits of $155,227 and $28,815 for 2004 and 2005, respectively.  Respondent also had received Forms 1099-INT, Interest Income, from SunCoast, reporting that petitioner received interest income of $289 and $208 for 2004 and 2005, respectively.  On the basis of respondent's bank deposits analysis and the third-party payor information, respondent prepared substitutes for returns for petitioner under section 6020(b).

---

[4]Ms. McCormick is petitioner's ex-wife.

**[*6]** Respondent subsequently mailed to petitioner the notice of deficiency for 2004 and 2005. On the basis of petitioner's bank deposits, respondent determined that petitioner failed to report on Schedules C gross receipts of $155,227 and $28,815 for 2004 and 2005, respectively. On the basis of the Forms 1099-INT filed by SunCoast, respondent determined that petitioner failed to report interest income of $289 and $208 for 2004 and 2005, respectively. Respondent also determined that petitioner was liable for additions to tax under sections 6651(a)(1) and (2) and 6654 for 2004 and 2005.

IV.    Petitioner's Compliance History

Petitioner failed to file Federal income tax returns for 2000 through 2009. The record contains no indication that petitioner has ever filed Federal employment tax returns or made any estimated tax payments. Petitioner's history shows an extended failure to comply with his tax reporting and payment obligations. Petitioner also failed to cooperate with the revenue agent assigned to the examination for his 2004 and 2005 taxable years.

OPINION

I.    Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the

**[*7]** determinations are erroneous. See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). The burden of proof shifts to the Commissioner, however, if the taxpayer produces credible evidence to support the deduction or position, the taxpayer complied with the substantiation requirements, and the taxpayer cooperated with the Secretary[5] with regard to all reasonable requests for information. Sec. 7491(a); <u>see also</u> <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440-441 (2001).

Petitioner does not contend that section 7491(a)(1) should shift the burden here, and the record establishes that he did not satisfy the section 7491(a)(2) requirements. Accordingly, petitioner bears the burden of proof with respect to all disputed factual issues.

II. <u>Petitioner's Unreported Income</u>

Section 61(a) defines gross income as "all income from whatever source derived" and includes compensation paid for services, whether furnished by the taxpayer as an employee, a self-employed person, or an independent contractor. A

---

[5]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A)(i).

**[*8]** taxpayer must maintain books and records establishing the amount of his or her gross income. Sec. 6001. If a taxpayer fails to maintain the required books and records, the Commissioner may determine the taxpayer's income by any method that clearly reflects income. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989). The Commissioner's reconstruction of income "need only be reasonable in light of all surrounding facts and circumstances." Petzoldt v. Commissioner, 92 T.C. at 687.

The Commissioner has great latitude in reconstructing a taxpayer's income. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. at 687, 693. The Commissioner may reconstruct a taxpayer's income using third-party information returns. See Parker v. Commissioner, 117 F.3d 785 (5th Cir. 1997); Ketler v. Commissioner, T.C. Memo. 1999-68. The Commissioner also may use bank records and other third-party records to reconstruct a taxpayer's income. See Parkinson v. Commissioner, 647 F.2d 875, 876 (9th Cir. 1981), aff'g T.C. Memo. 1979-319; see also Williams v. Commissioner, 999 F.2d 760, 764 (4th Cir. 1993), aff'g T.C. Memo. 1992-153.

As noted above, the Commissioner's deficiency determination normally is entitled to a presumption of correctness. See Rule 142(a). However, the U.S. Court of Appeals for the Eleventh Circuit, to which an appeal in this case would

[*9] lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), has held that the Commissioner's determination of unreported income is entitled to a presumption of correctness only if the determination is supported by a minimal evidentiary foundation linking the taxpayer to an income-producing activity, see Blohm v. Commissioner, 994 F.2d 1542, 1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636. Once the Commissioner produces evidence linking the taxpayer to an income-producing activity, the presumption of correctness applies and the burden of production shifts to the taxpayer to rebut that presumption by establishing that the Commissioner's determination is arbitrary or erroneous. Id.; see also United States v. Janis, 428 U.S. 433, 441-442 (1976).

Petitioner admitted that he received payments from Puente Contracting, MCB Framing, MCB Shell Contractor, Harrington Homes, and Equity Three Enterprises in exchange for the use of his general contractor's license. Petitioner also admitted that he received payments from Ms. Lee, Creative Coast Builders, and Martha Mejia Masonry in exchange for his construction services. He admitted that he deposited the payments into his AmSouth and Suncoast accounts. Respondent introduced into evidence petitioner's bank records, which confirm that petitioner deposited into his accounts payments from his various clients and earned interest income with respect to his Suncoast account. Because this

**[\*10]** evidence is sufficient to link petitioner to an income-producing activity, the presumption of correctness applies and he has the burden of producing evidence to rebut that presumption.

### A.    Petitioner's Unreported Gross Receipts

The bank deposits method is a permissible method of reconstructing income. See Clayton v. Commissioner, 102 T.C. 632, 645 (1994); see also Langille v. Commissioner, T.C. Memo. 2010-49, aff'd, 447 Fed. Appx. 130 (11th Cir. 2011). Bank deposits constitute prima facie evidence of income. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The Commissioner need not show the likely source of a deposit treated as income, but the Commissioner "must take into account any nontaxable source or deductible expense of which * * * [he] has knowledge" in reconstructing income using the bank deposits method. See Clayton v. Commissioner, 102 T.C. at 645-646. However, the Commissioner need not follow any "leads" suggesting that a taxpayer has deductible expenses. DiLeo v. Commissioner, 96 T.C. 858, 872 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). After the Commissioner reconstructs a taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the Commissioner's use of the bank deposits method is unfair or inaccurate. See Clayton v. Commissioner, 102 T.C. at 645; DiLeo v. Commissioner, 96 T.C. at 883. The taxpayer must

**[*11]** prove that the reconstruction is in error and may do so, in whole or in part, by proving that a deposit is not taxable. See Clayton v. Commissioner, 102 T.C. at 645.

Petitioner failed to produce any books or records relating to his income for the years in issue. Petitioner also failed to cooperate with respondent and respondent's revenue agent to determine the amounts of his gross receipts for the years at issue. Although petitioner claims that he maintained records and that these records were stolen, he did not make any attempt to reconstruct these records or to cooperate with respondent to determine the proper amounts of his gross receipts for the years in issue. See, e.g., Jones v. Commissioner, T.C. Memo. 1994-230, aff'd without published opinion, 68 F.3d 460 (4th Cir. 1995); Famularo v. Commissioner, T.C. Memo. 1984-37. Therefore, we find that it was reasonable for respondent to use the bank deposits method to reconstruct petitioner's income. Accordingly, petitioner bears the burden of proving that respondent's determinations are arbitrary or erroneous.

Petitioner argues that respondent's income reconstruction treated some nontaxable deposits as income. In defending against the Commissioner's reconstruction of income, the taxpayer bears the burden of showing whether and to what extent the Commissioner included deposits derived from nontaxable sources.

[*12] Dodge v. Commissioner, 981 F.2d 350, 357 (8th Cir. 1992), aff'g in part, rev'g in part 96 T.C. 172 (1991). Nontaxable items include interaccount transfers, returned checks, and, in some instances, money a taxpayer receives merely as a conduit. See MacGregor v. Commissioner, T.C. Memo. 2010-187, aff'd, __ Fed. Appx. __, 111 A.F.T.R.2d (RIA) 2013-314 (9th Cir. Dec. 21, 2012); Taylor v. Commissioner, T.C. Memo. 2009-235; Estate of Kalichuk v. Commissioner, T.C. Memo. 1964-336 (holding that taxpayers were merely conduits and had not received taxable income where the taxpayers deposited checks into their account on behalf of third parties and transmitted the check proceeds to the third parties shortly thereafter).

First, petitioner contends that with respect to the checks from Harrington Homes, he did not receive income equal to the stated amounts of the checks. Petitioner testified that he deposited the checks from Harrington Homes on behalf of one of his clients. He testified that the client did not have a general contractor's license; accordingly, the client used petitioner's general contractor's license. He further testified that after the client received a check from Harrington Homes, the client would present the check to petitioner and petitioner would deposit the check into his account. Petitioner testified that he would retain a percentage of the check amount as a fee for the use of his general contractor's license and that he would

**[*13]** return to the client the balance of the check amount.  Petitioner testified that he returned the balance by paying his client with a check drawn on his AmSouth account.

During 2004 petitioner deposited into his AmSouth account five checks from Harrington Homes:  (1) check No. 5165, dated January 29, 2004, for $68,152; (2) check No. 5190, dated February 12, 2004, for $5,000; (3) check No. 5239, dated February 24, 2004, for $24,012.50; (4) check No. 5241, dated February 25, 2004, for $11,560; and (5) check No. 5335, dated March 30, 2004, for $29,307.  Petitioner's AmSouth account statements show that petitioner wrote three large checks during that period:  (1) a check credited on January 30, 2004, for $66,150; (2) a check credited on February 26, 2004, for $38,672; and (3) a check credited on April 5, 2005, for $28,307.  Petitioner did not deposit into his account any checks from Harrington Homes during 2005.

Respondent did not introduce into evidence the canceled checks drawn on petitioner's AmSouth account.  Petitioner did not produce any of his own records or call any witnesses to corroborate his testimony that he was not entitled to the full amounts of the checks he deposited from Harrington Homes.  Nevertheless, we find petitioner's testimony credible.  A review of petitioner's AmSouth account statements shows that in January, February, and April, he wrote checks

[*14] drawn on his account that correspond with the amounts of the Harrington Homes checks deposited in January, February, and March. This evidence is consistent with petitioner's testimony regarding his right to income with respect to the Harrington Homes checks. Furthermore, we note that with respect to petitioner's AmSouth account, respondent determined that he had unreported gross receipts of $144,532 and $11,315 during 2004 and 2005, respectively. The discrepancy between the amounts of gross receipts determined for 2004 and 2005 supports a finding that petitioner did not earn gross receipts of $144,532 as determined by respondent. Accordingly, we find that his gross receipts for 2004 must be reduced by $133,129, the amount of funds petitioner, acting as a mere conduit, transmitted to his client.

Second, petitioner contends that the $2,600 deposit into his Suncoast account during 2004 does not constitute taxable income because he transferred the funds from one of his business bank accounts. Petitioner's Suncoast account statement shows that on June 25, 2004, he deposited into his account $2,900. Notations on petitioner's account statement, apparently made by respondent's revenue agent, show that petitioner deposited cash of $2,600 as well as a $300 check. Respondent's revenue agent determined that only the cash portion of petitioner's deposit constituted taxable income.

**[\*15]** Petitioner's AmSouth account statements do not show any corresponding withdrawals around the time of his cash deposit. In addition, our review of the bank account statements for Equity Three Enterprises and Elkam Construction, Inc., accounts purportedly related to petitioner's business activities do not show any corresponding withdrawals around the time of his cash deposit. Accordingly, we find that respondent's revenue agent properly included the $2,600 cash deposit in petitioner's gross receipts for 2004.

Third, petitioner argues that check No. 1009 should be excluded from the calculation of gross receipts. Check No. 1009 is a $95.60 payment from Creative Coast Builders to petitioner dated November 30, 2004. Petitioner testified that he previously had purchased nails for Creative Coast Builders and the $95.60 payment was a reimbursement for that purchase. In the absence of corroborating evidence, we find his testimony regarding the disputed check to be self-serving and unreliable. See Tokarski v. Commissioner, 87 T.C. at 76-77. Petitioner has failed to introduce credible evidence that check No. 1009 constituted nontaxable income. Accordingly, we find that respondent's revenue agent properly included the $95.60 payment in petitioner's gross receipts for 2004.

Having decided that respondent acted reasonably in using an indirect method to reconstruct petitioner's income and having considered petitioner's

**[\*16]** arguments regarding whether such income constituted taxable income, we now review respondent's calculations of petitioner's taxable income for the years in issue. To prove how respondent calculated petitioner's gross receipts, respondent introduced copies of petitioner's AmSouth and Suncoast bank account statements as well as the revenue agent's spreadsheets.

Our analysis of the revenue agent's income reconstruction spreadsheet and petitioner's bank statements convinces us that the revenue agent erroneously included in petitioner's gross receipts check No. 213. Check No. 213 constituted a payment of $1,000 from Ms. Lee to petitioner. Petitioner deposited check No. 213 into his AmSouth account during 2004, but the check was returned, presumably for insufficient funds. Respondent's revenue agent failed to exclude this check in calculating petitioner's gross receipts for 2004. Accordingly, we will reduce petitioner's Schedule C gross receipts for 2004 by $1,000 in addition to the amounts discussed supra pp. 13-14.

Our analysis of petitioner's bank account statements and the revenue agent's spreadsheet confirms that the revenue agent properly reconstructed petitioner's Schedule C gross receipts for 2005. Accordingly, we sustain respondent's determination with respect to petitioner's Schedule C gross receipts for 2005.

[*17] In summary, we find that petitioner had gross receipts of $21,088 and $28,815 for 2004 and 2005, respectively, that he should have reported on Schedules C.

B.    Petitioner's Unreported Interest Income

Section 61(a)(4) includes interest in a taxpayer's gross income. Petitioner's Suncoast account statements establish that he received interest income for the years in issue. Furthermore, respondent introduced Forms 1099-INT with respect to the interest income adjustments, and petitioner has raised no reasonable dispute with respect to the accuracy of the information returns; therefore, the burden of production with respect to the income does not shift to respondent under section 6201(d).[6]

Petitioner has failed to introduce any credible evidence contesting respondent's determinations that he received interest income from Suncoast of $289 and $208 in 2004 and 2005, respectively. Because interest must be included

---

[6]Under sec. 6201(d), if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed by a third party and the taxpayer meets certain other requirements, the Commissioner bears the burden of producing reasonable and probative information, in addition to the information return, concerning the deficiency attributable to the income item. The burden shifts to the Commissioner only if the taxpayer fully cooperates with the Commissioner by providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested. See id.

**[*18]** in petitioner's income under section 61, we sustain respondent's determinations with respect to the interest income from Suncoast.

III.     Business Expenses

Generally, a taxpayer is entitled to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business. Sec. 162(a); Am. Stores Co. v. Commissioner, 114 T.C. 458, 468 (2000). An expense is ordinary if it is customary or usual within the particular trade, business, or industry or if it relates to a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the development of the business. See Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Personal, living, or family expenses generally are not deductible. See sec. 262(a).

Deductions are a matter of legislative grace, and ordinarily a taxpayer must prove that he is entitled to the deductions he claims. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer must maintain records to substantiate claimed deductions and to establish the taxpayer's correct tax liability. Higbee v. Commissioner, 116 T.C. at 440; see also sec. 6001. The taxpayer must produce such records upon the Secretary's request. Sec. 7602(a); see also sec. 1.6001-1(e), Income Tax Regs. Adequate substantiation must establish the

**[*19]** amount and purpose of a claimed deduction. Higbee v. Commissioner, 116 T.C. at 440; see also Hradesky v. Commissioner, 65 T.C. 87 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976). In deciding whether a taxpayer adequately substantiated a claimed deduction, we are not required to accept the taxpayer's "self-serving, unverified, and undocumented testimony." Shea v. Commissioner, 112 T.C. 183, 189 (1999).

When a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the expense, we may estimate the amount of the deductible expense. Cohan v. Commissioner, 39 F.2d 540, 542-544 (2d Cir. 1930). However, we cannot estimate the amount unless the taxpayer introduces evidence that he paid or incurred the expense and the evidence is sufficient for us to develop a reasonable estimate. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). In estimating the amount, we bear heavily upon the taxpayer who failed to maintain and produce the required records. See Cohan v. Commissioner, 39 F.2d at 544.

Petitioner contends that he has adequately substantiated his Schedule C expenses because his income and expense records were stolen following the years at issue and because he has introduced evidence, in the form of his own testimony and other documents, showing the expenses he incurred.

[*20] When a taxpayer's records have been destroyed or lost due to circumstances beyond the taxpayer's control, the taxpayer may substantiate his expenses by making a reasonable reconstruction of the expenditures or use. See sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). A taxpayer is required to reconstruct what records he can. See, e.g., Chong v. Commissioner, T.C. Memo. 2007-12, slip op. at 9. If the taxpayer establishes that the records were lost or destroyed because of circumstances beyond his control,[7] he must nevertheless substantiate his expenditures through secondary evidence. See Boyd v. Commissioner, 122 T.C. 305, 320 (2004).

While we acknowledge that petitioner kept some records[8] and that he testified that other records were lost or destroyed, he still had an obligation to substantiate his expenditures. Petitioner made no effort to reconstruct his records

---

[7]Petitioner testified that he kept records of his income and expenses on his computer. He further testified that his brother stole his computer after the years in issue. Petitioner testified that he filed a police report with respect to the theft, but he did not introduce the police report as evidence.

[8]While petitioner testified that he maintained records, he also testified that he did not maintain records of his business expenses, that he relied on his bank statements to calculate his business expenses, and that he paid some expenses in cash. Accordingly, although we find that petitioner kept some records, we are unable to find that he maintained adequate records to substantiate his business expenses. Because petitioner made no attempt to reconstruct his expenses, however, we need not delve further into the adequacy of his recordkeeping.

[*21] or to substantiate his expenses with secondary evidence such as third-party testimony or invoices and receipts.  Petitioner testified that he paid laborers and purchased materials for work on his construction projects, but his testimony was vague and unspecific and we find it insufficient to provide a basis for estimating the expenses.  In the absence of corroborating evidence, we are not required to accept petitioner's testimony.  See Tokarski v. Commissioner, 87 T.C. at 77.  Petitioner has failed to prove that he is entitled to any deductions for business expenses.

IV.    Additions to Tax

If the taxpayer assigns error to the Commissioner's determination that he is liable for an addition to tax, the Commissioner has the burden, under section 7491(c), of producing evidence with respect to the liability of the taxpayer for the addition to tax.  See Higbee v. Commissioner, 116 T.C. at 446-447.  To meet his burden of production, the Commissioner must come forward with sufficient evidence that it is appropriate to impose the addition to tax.  Id.  Once the Commissioner meets his burden, the taxpayer must come forward with evidence sufficient to persuade this Court that the determination is incorrect.  Id.

Respondent determined that petitioner is liable for additions to tax for failure to timely file returns for 2004 and 2005 under section 6651(a)(1).  Section

**[\*22]** 6651(a)(1) imposes an addition to tax for failure to file a return timely in the amount of 5% of the tax required to be shown on the return for each month during which such failure continues, not to exceed 25% in the aggregate, unless it is shown that such failure is due to reasonable cause and not due to willful neglect.

The parties stipulated that petitioner failed to file returns for 2004 and 2005. Respondent has satisfied the burden of production under section 7491(c), and petitioner must come forward with evidence sufficient to persuade the Court that respondent's determination is erroneous.

Petitioner claims that he did not file his returns because he did not understand how to complete a Federal income tax return and he could not afford to hire a return preparer. Petitioner's explanation does not constitute reasonable cause for his failure to file. See, e.g., Cox v. Commissioner, 54 T.C. 1735, 1744 (1970); Blair v. Commissioner, T.C. Memo. 1991-456. Petitioner did not argue that his failure to file returns was due to reasonable cause and not due to willful neglect, and he presented no credible evidence on the issue. Accordingly, we hold that petitioner is liable for section 6651(a)(1) additions to tax for 2004 and 2005.[9]

---

[9]The amounts of the sec. 6651(a)(1) additions to tax for 2004 and 2005 must be adjusted to reflect the adjustments to gross receipts calculated in this opinion.

**[*23]** Respondent also determined that petitioner is liable for additions to tax for failure to pay tax shown on a return under section 6651(a)(2). Section 6651(a)(2) imposes an addition to tax for failure to pay timely the amount of tax shown on a return. The section 6651(a)(2) addition to tax applies only when an amount of tax is shown on a return. Cabirac v. Commissioner, 120 T.C. 163, 170 (2003). Petitioner did not file 2004 and 2005 returns. However, respondent prepared substitutes for returns under section 6020(b). A return made by the Secretary under section 6020(b) is treated as the return filed by the taxpayer for purposes of determining whether the section 6651(a)(2) addition to tax applies. Sec. 6651(g)(2); Wheeler v. Commissioner, 127 T.C. 200, 208-209 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

Respondent introduced into evidence substitutes for returns that satisfy the requirements of section 6020(b), as well as a copy of petitioner's account transcripts. The substitutes for returns and the account transcripts establish that petitioner failed to pay the tax shown on the substitutes for returns. Respondent has satisfied the burden of production under section 7491(c). Petitioner did not introduce any evidence that he was unable to pay the tax owed or that he would have suffered undue hardship if he had paid the tax on the due date. See sec.

**[\*24]** 301.6651-1(c), Proced. & Admin. Regs.  Accordingly, we hold that petitioner

is liable for the section 6651(a)(2) additions to tax for 2004 and 2005.[10]

Respondent also determined that petitioner is liable for additions to tax for

failure to pay estimated tax under section 6654.  Section 6654 imposes an addition

to tax for underpayment of a required installment of estimated tax.  Each required

installment of estimated tax is equal to 25% of the "required annual payment",

which in turn is equal to the lesser of (1) 90% of the tax shown on the taxpayer's

return for that year (or, if no return is filed, 90% of his or her tax for such year), or

(2) if the taxpayer filed a return for the immediately preceding taxable year, 100% of

the tax shown on that return.  Sec. 6654(d)(1)(A) and (B).  A taxpayer has an

obligation to pay estimated tax only if he has a "required annual payment".  Wheeler

v. Commissioner, 127 T.C. at 212.

Petitioner admitted that he did not make any estimated tax payments for the

years in issue.  Respondent introduced copies of petitioner's account transcripts

which show that petitioner did not make any estimates tax payments.  Respondent

also introduced evidence that petitioner failed to file Federal income tax returns for

2003-05, and petitioner stipulated that he failed to file returns for 2003-05.  On

---

[10]The amounts of the sec. 6651(a)(2) additions to tax for 2004 and 2005 must be adjusted to reflect the adjustments to gross receipts calculated in this opinion.

**[*25]** the basis of this information and the evidence with respect to petitioner's income for the years in issue, we are able to conclude that petitioner had required annual payments for 2004 and 2005. Accordingly, we hold that petitioner is liable for the section 6654(a) additions to tax for 2004 and 2005.[11]

We have considered the remaining arguments made by the parties and, to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.

---

[11]The amounts of the sec. 6654(a) additions to tax for 2004 and 2005 must be adjusted to reflect the adjustments to gross receipts calculated in this opinion.