T.C. Memo. 1998-170

UNITED STATES TAX COURT

ALONZO AND EMMA J. BRADLEY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24265-95.                    Filed May 11, 1998.

Alonzo and Emma J. Bradley, pro sese.

David E. Whitcomb, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, Judge: Respondent determined a deficiency in petitioners' 1992 Federal income taxes in the amount of $14,454, an addition to tax under section 6651(a)[1] in the amount of

_____

[1]Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and
(continued...)

$697.50, and an accuracy-related penalty under section 6662(d) in the amount of $1,733.20.

After concessions, the issues for decision are as follows: (1) Whether petitioners are entitled to deductions claimed for unreimbursed employee business expenses; (2) whether petitioners are entitled to deductions claimed for losses with respect to certain real property held by them in 1992; (3) whether petitioners are liable for an addition to tax under section 6651(a)(1); and (4) whether petitioners are liable for an accuracy-related penalty under section 6662(d).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, petitioners resided in League City, Texas.

During the taxable year 1992, petitioner Alonzo Bradley (Mr. Bradley) was employed as an engineer by Paramax Systems Corp., an affiliate of Unisys Corporation (Unisys). Unisys served as a subcontractor for the Johnson Space Center (Space Center) Shuttle Flight Operation of the National Aeronautics and Space Administration (NASA). Mr. Bradley worked on the Shuttle Operations Contract (SOC or SOP Contract) during 1992. As part

---

[1](...continued)
Procedure.

of his duties, Mr. Bradley was required to travel from his office at Unisys to various locations at the Space Center and to the offices of Loral Space Systems (Loral), another subcontractor. The distance between Mr. Bradley's office and the Space Center complex was approximately 3 miles, and between Mr. Bradley's office and Loral was between 3 and 3.5 miles.

NASA operated a free shuttle service between sites within the Space Center complex and locations outside the Space Center complex, including Unisys and Loral, on weekdays during normal business hours. In addition, a taxi service between these sites was also provided during normal business hours when time constraints made the shuttle impractical. Both the shuttle and taxi services were available to Mr. Bradley. Mr. Bradley also routinely worked overtime after normal business hours and on weekends, at which times the shuttle and taxi services were not available. Mr. Bradley was compensated for overtime work for 42 of the 52 weekly pay periods in 1992.

Mr. Bradley did not seek reimbursement from his employer for any transportation costs in 1992. It is uncertain whether he was eligible for such reimbursement because the written policy of his employer is ambiguous for an employee in Mr. Bradley's classification who is compensated for overtime.[2] Mr. Bradley

_____

[2]We note that in a prior case involving an earlier year of the same petitioners, the Court found as a fact that Mr. Bradley was eligible for partial reimbursement from Unisys for business
(continued...)

claimed a deduction for unreimbursed employee business expenses in the amount of $5,904 for costs associated with the use of his personal automobile for trips from his office to the Space Center and to Loral.  Petitioners computed this figure on Form 2106 attached to their return by multiplying Mr. Bradley's claimed vehicle expenses for the year ($7,569) by a claimed business-use percentage of 78 percent, for a product of $5,904 in vehicle expenses attributable to business use.  The business-use percentage used by Mr. Bradley was calculated by dividing the claimed business-use mileage of his vehicle for 1992 (9,974 miles) by the claimed total mileage for that year (12,816 miles).  Petitioners claimed an additional $189 in miscellaneous business expenses for a total of $6,093 in unreimbursed employee business expenses attributable to Mr. Bradley's employment.

In 1992, petitioner Emma J. Bradley (Mrs. Bradley) was employed as a nurse by Gastroenterology Consultants (GC), a two-physician medical practice with offices in Webster, Alvin, Pasadena, and Houston, Texas.  In carrying out her duties, Mrs. Bradley was required to travel between the various offices.  GC had an established travel reimbursement policy under which employees were reimbursed for business-related travel between its

---

[2](...continued)
use of his personal automobile.  Bradley v. Commissioner, T.C. Memo. 1996-461.  Our decision in the instant case does not, in any event, depend upon Mr. Bradley's eligibility for reimbursement.

various offices.[3]  Under GC's travel reimbursement procedure,
employees were provided log books in which to record their
business-related travel, and they were required to submit monthly
tallies of their business mileage in order to be reimbursed.
GC's business records for 1992 contain several monthly tallies
with respect to Mrs. Bradley, indicating that she was reimbursed
in the amount of $182.30 for 661.8 miles of business-related
travel in 1992.

Mrs. Bradley claimed a deduction for unreimbursed employee
business expenses in the amount of $5,100 for costs associated
with the use of two personal automobiles.  Petitioners calculated
this figure on Form 2106 attached to their return by multiplying
Mrs. Bradley's claimed vehicle expenses (other than depreciation)
for each vehicle, in the amounts of $1,435 and $2,671, by the
claimed business-use percentage for each vehicle, 91 percent and
90 percent, respectively, for products of $1,306 and $2,404 in
vehicle expenses attributable to business use.  Petitioners
similarly calculated a $1,390 depreciation expense for one
vehicle based on a claimed business-use percentage of 91 percent.
The business-use percentages used by Mrs. Bradley were calculated
by dividing the claimed business-use mileage of her vehicles for
1992 (11,652 miles and 1,058 miles, respectively) by the claimed

---

[3]Our findings regarding GC and its travel reimbursement
policies are based in part on the testimony of Nancy Montgomery,
office manager of GC in 1992.  We hereby overrule petitioners'
objection to her testimony.

total mileage for that year (12,867 miles and 1,176 miles, respectively).  Petitioners claimed an additional $677 in miscellaneous business expenses in connection with Mrs. Bradley's employment for a total of $5,777 in unreimbursed employee business expenses.

In the notice of deficiency, respondent disallowed claimed deductions for all of petitioners' employee business expenses on the grounds that (i) they constituted reimbursable transportation expenses and/or (ii) they constituted personal commuting expenses.

On Schedule E of their return, petitioners claimed $22,507 in losses with respect to four pieces of real property held by them in 1992, consisting of three residential rental properties (the Hearthwood Condominium, the River Stone II Condominium, and a house in Windsor Village) and a parcel of vacant land in Utica, Mississippi (the Mississippi land).  Petitioners computed losses on Schedule E as follows:

| Item | Hearthwood | River Stone | Windsor Village | Mississippi Land | Total |
|------|-----------|-------------|-----------------|------------------|-------|
| Income (Rents) | $2,400 | $3,000 | $2,400 | -0- | $7,800 |
| Expenses (Management fees, mortgage interest, etc.) | 6,472 | 8,886 | 4,743 | $2,003 | 22,104 |
| Depreciation | 2,757 | 3,628 | 1,818 | -0- | 8,203 |
| Loss | ($6,829) | ($9,514) | ($4,161) | ($2,003) | ($22,507) |

In the notice of deficiency, respondent disallowed the $22,104 in expenses claimed by petitioners with respect to the

four properties on the grounds that petitioners (i) failed to establish that the expenses were paid or incurred during the taxable year and/or (ii) failed to establish that the expenses were ordinary and necessary. Respondent also disallowed the $8,203 in depreciation claimed on the grounds that petitioners (i) failed to establish their cost or other basis in the properties and/or (ii) failed to establish that the properties were depreciable.

Petitioners' return was due on April 15, 1993. The return was executed by petitioners on April 26, 1993, and filed on or about that date.

OPINION

Employee Vehicle Expenses

Respondent argues that petitioners failed to substantiate their deductions for vehicle expenses as required by section 274 because they failed to establish the business use of their personal automobiles, as well as the location or destination of travel, and the business purpose.[4]

---

[4]Respondent also argues in the alternative that Mr. Bradley's vehicle expenses were not "ordinary and necessary" because they were reimbursable by his employer or because the shuttle and taxi services were available. Because we find that petitioners fail to satisfy sec. 274 with respect to Mr. Bradley's vehicle expenses, we do not address respondent's other arguments.

- 8 -

Section 274(d) places strict substantiation requirements on a taxpayer for claimed deductions relating to the use of "listed property", which is defined under section 280F(d)(4)(A)(i) to include passenger automobiles.  Under this provision, any deduction claimed with respect to the use of a passenger automobile will be disallowed unless the taxpayer substantiates various elements of the use by adequate records or other sufficiently corroborating evidence.  Sec. 274(d); see also sec. 1.274-5T(c)(2)(ii)(C)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46018 (Nov. 6, 1985).  Pursuant to the regulations promulgated under section 274, one of the elements required to be substantiated is the amount of business use and the amount of total use of the automobile for the taxable period, based upon mileage.  Makspringer v. Commissioner, T.C. Memo. 1994-468; sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

With respect to Mrs. Bradley's vehicle expenses, the record shows that she worked for GC in 1992, and there is no evidence that she was employed anywhere else or otherwise involved in carrying on another trade or business.  GC's records indicate that Mrs. Bradley logged and was reimbursed for 661.8 miles of business travel in 1992.  Nonetheless, Mr. Bradley submitted a computer-generated spread sheet listing daily business mileage for Mrs. Bradley totaling 11,652 miles in 1992, which is nearly 11,000 more miles than reported to her employer.  Mrs. Bradley

did not appear at trial or testify to explain this discrepancy. In the absence of any corroborating evidence that Mrs. Bradley used her personal automobiles for business purposes in excess of the mileage reimbursed by GC, we do not find credible the claim that Mrs. Bradley had an additional 10,990 miles of business use in 1992.[5] As a result, petitioners fail to meet the requirement of the section 274 regulations that a taxpayer substantiate, with adequate records or sufficiently corroborative evidence, the amount of business use of a passenger automobile. Accordingly, we sustain respondent's determination disallowing all vehicle expenses claimed by Mrs. Bradley.

With respect to Mr. Bradley's vehicle expenses, Mr. Bradley also introduced a similar computer-generated spread sheet purporting to show his own daily business mileage in 1992. Mr. Bradley's daily entries record mileage ranging from 36 to 54 miles, with most entries ranging between 40 and 45 miles for each day of every week that he received overtime pay (i.e., 42 of his 50 workweeks in 1992). Mr. Bradley testified that this daily mileage represented trips between his office at Unisys and various buildings within the Space Center complex as well as the offices of other subcontractors servicing the SOP Contract. Mr.

---

[5]The spread sheet introduced by Mr. Bradley at trial lists mileage of 11,652, which is the business mileage claimed on the return with respect to one of the two vehicles for which Mrs. Bradley claimed business use. No evidence was offered with respect to the 1,058 in business miles claimed with respect to the other vehicle.

Bradley further testified that the trips occurred when the shuttle and taxi services were not available, i.e., after normal business hours (or when he anticipated completing his duties after normal hours) or on weekends.

We find a number of problems with Mr. Bradley's testimony. First, although Mr. Bradley created the impression in his direct testimony that he was required to travel to a number of subcontractors' offices in addition to the Space Center, on cross-examination Mr. Bradley conceded that there were only two subcontractors that he was required to visit in 1992, Loral and Bendix Corporation, and that Bendix's offices were located across the street from Mr. Bradley's office. As to how he incurred daily mileage generally exceeding 40 miles, Mr. Bradley testified that multiple trips were required. Mr. Bradley also testified that the distance between his office at Unisys and the Loral location was 5.5 to 6.5 miles. He did not offer an estimate of the distance between Unisys and the Space Center. However, another Unisys employee called by respondent testified that the distance between Unisys and Loral was 3 to 3.5 miles, and the distance between Unisys and the Space Center was 3 miles. A scaled map introduced by respondent corroborates these estimates, and we accordingly find that the distances are as estimated by respondent's witness. At these distances, Mr. Bradley would have had to make approximately five to seven round-trips between Unisys and Loral and/or the Space Center each day, after normal

business hours, to reach the claimed business mileage. Moreover, Mr. Bradley claimed a relatively constant level of mileage for each workday of an overtime week, whether his overtime hours for the week were modest (e.g., 8 hours) or extensive (e.g., 31 hours).[6] Given these circumstances, we do not find Mr. Bradley's log of business use credible. We conclude that the claimed business miles of 9,976 in 1992 are inflated. Because we find unreliable the evidence offered by Mr. Bradley of his business use, petitioners fail to meet the requirement of the section 274 regulations that a taxpayer substantiate, with adequate records or sufficiently corroborative evidence, the amount of business use of a passenger automobile. Accordingly, we sustain respondent's determination disallowing all vehicle expenses claimed by Mr. Bradley.

Miscellaneous Employee Business Expenses

Respondent also disallowed the deduction for miscellaneous business expenses attributable to Mr. Bradley's employment in the amount of $189. Since petitioners offered no evidence with respect to this amount, we sustain respondent's determination.[7]

---

[6]For the week ended Jan. 17, 1992, Mr. Bradley worked 8.5 hours of overtime and logged between 41-43 miles for each day January 13th through January 17th. For the week ended Jan. 24, 1992, Mr. Bradley worked 31 hours of overtime and logged between 41-44 miles for each day January 20th through January 24th.

[7]Respondent conceded the $677 in miscellaneous employee business expenses claimed with respect to Mrs. Bradley's employment.

Real Estate Losses

In the notice of deficiency, respondent disallowed all expenses, totaling $22,104, claimed by petitioners on Schedule E with respect to four real properties, on the grounds that petitioners failed to establish that the expenses were "paid or incurred during the taxable year" or were "ordinary and necessary".  In addition, respondent disallowed the depreciation claimed on Schedule E with respect to three of the properties, totaling $8,203, on the grounds that petitioners failed to establish their basis in each property or its depreciable character.  Respondent now concedes that petitioners have substantiated the expenses and the depreciation claimed with respect to the three residential properties (Hearthwood, River Stone, and Windsor), but seeks to challenge the net losses from these properties on the grounds that petitioners have failed to substantiate the amount of rental income and have failed to establish that they were in the business of renting property or holding property for profit.  With respect to the Mississippi land, respondent challenges the net loss on the foregoing grounds as well as on petitioners' failure to substantiate some of the expenses.

Petitioners object to respondent's raising their failure to substantiate rental income on the grounds that it is a new issue.

In the notice of deficiency, respondent specifically disallowed the Schedule E expenses and the depreciation for each

property.  Neither the expense nor the depreciation figures reflect rental income received.  There was no mention of Schedule E rental income or the business or profit-seeking status of petitioners' real estate activities in respondent's Answer or in his trial memorandum.  Respondent first formally raised the substantiation of the rental income at trial.  The challenge to the business or profit-seeking status of petitioners' activities was not raised until the posttrial brief.  Because the notice was quite specific regarding the Schedule E items disallowed, we do not believe that the issue of the "trade or business" or "for profit" status of petitioners' real estate activities was fairly raised in the pleadings prior to trial, or during the trial, and decline to permit respondent to raise it for the first time in a posttrial brief.  See Fox Chevrolet, Inc. v. Commissioner, 76 T.C. 708, 735 (1981); Estate of Horvath v. Commissioner, 59 T.C. 551, 555-556 (1973).  Since respondent has conceded the expenses and depreciation disallowed in the notice, we allow deductions for those items.

Finally, we consider whether petitioners have substantiated the Schedule E expenses relating to the Mississippi land disallowed in the notice.[8]  To substantiate the Schedule E auto and travel expenses that were disallowed, petitioners offered

[8]Respondent has conceded that petitioners are allowed a deduction in the amount of $259 for taxes related to the Mississippi land.

into evidence copies of receipts for food and gasoline totaling $232.77 and a copy of an airline ticket in the amount of $318. Mr. Bradley testified that he incurred the food and gasoline expenses in an attempt to generate interest in the property by showing it to a friend from Houston and holding a picnic for local residents.  He testified that the airline ticket was purchased to meet with a former business partner in Chicago to discuss developing the land as a low-income housing project. Since the foregoing expenses are for travel and entertainment they must, in addition to meeting the requirements of sections 162 or 212, be substantiated in accordance with the requirements of section 274(d).  Since petitioners have not substantiated the business purpose of the foregoing expenditures with a written explanation, see sec. 1.274-5T(c)(2)(ii)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46018 (Nov. 6, 1985), or corroborated Mr. Bradley's statements with direct or circumstantial evidence of the time, place, or business purpose of the expenditures, see sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020-46021 (Nov. 6, 1985), we find the receipts and Mr. Bradley's testimony insufficient for purposes of section 274(d) substantiation and therefore sustain respondent's determination disallowing the auto and travel expenses.

With respect to the disallowance of a $1,500 management fee claimed on Schedule E for the Mississippi land, petitioners offered a copy of a check made out to "DECA Corp." as payee in

the amount of $1,500 dated August 31, 1992, and endorsed on behalf of "Utica Deca Corporation."  Mr. Bradley testified that he paid this amount as a management fee to have the property monitored to prevent unauthorized woodcutting or hunting.  Under section 212(2), a deduction is allowable for expenses that are ordinary and necessary "for the management, conservation, or maintenance of property held for the production of income."  The regulations promulgated under section 212 provide that the term "ordinary and necessary" means that the expenses must be reasonable in amount and bear a reasonable and proximate relation to the management, conservation, or maintenance of property held for such purposes.  Sec. 1.212-1(a)(2), (d), Income Tax Regs. The term "held for the production of income" includes held for appreciation in value, whether to maximize gain or to minimize loss.  See sec. 1.212-1(b), Income Tax Regs.  On this record, we find the management fees satisfy section 212(2) and decline to sustain respondent's disallowance of the deduction for them.

Addition to Tax for Failure To File a Timely Return

Section 6651(a)(1) imposes an addition to tax for failure to file timely Federal income tax returns unless the taxpayer shows that such failure was due to reasonable cause and not willful neglect.  United States v. Boyle, 469 U.S. 241, 245 (1985).  To prove "reasonable cause", a taxpayer must show that he exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time.  Crocker v.

<u>Commissioner</u>, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioners' return was due on April 15, 1993, and was not filed until on or about April 26, 1993. Petitioners argued that they did not believe they owed any tax, but their mistaken belief is not reasonable cause for failure to timely file a return. <u>Linseman v. Commissioner</u>, 82 T.C. 514, 523 (1984); <u>Cox v. Commissioner</u>, 54 T.C. 1735, 1744 (1970). Therefore, we find petitioners liable for the addition to tax under section 6651(a)(1).

<u>Penalty for Substantial Understatement of Tax</u>

Respondent also determined that petitioners are liable for the accuracy-related penalty for substantial understatement of tax under section 6662(b)(2). Since petitioners have not provided substantial authority for the positions taken on their return, or made any disclosure within the meaning of section 6662(d)(2)(B)(ii), the penalty is sustained in the event that the Rule 155 computation indicates that petitioners' understatement of tax exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on the return.

To reflect the foregoing and concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.