T.C. Summary Opinion 2011-122


UNITED STATES TAX COURT


HATTIE M. BONDS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15479-09S.          Filed October 17, 2011.


Hattie M. Bonds, pro se.

<u>Melissa J. Hedtke</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

_____

    [1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in, and accuracy-related penalties on, petitioner's Federal income taxes as follows:

| Year | Deficiency | Penalty - Sec. 6662(a) |
|------|-----------|------------------------|
| 2006 | $3,211.00 | $642.20 |
| 2007 | 2,499.00 | 499.80 |

The issues raised by the pleadings and tried to the Court are as follows:

(1) Whether petitioner held certain real property for the production of income. If so,

(2) whether losses claimed by petitioner in respect of such real property are subject to the passive activity loss rules of section 469. If not, or if excepted therefrom,

(3) whether petitioner substantiated losses claimed in respect of such real property; and

(4) whether petitioner is liable for accuracy-related penalties under section 6662(a).

We note that the notice of deficiency made other adjustments to income but that petitioner never challenged those adjustments either in the petition or at trial, or even on brief.[2]

---

[2] Thus: For 2006 and 2007 respondent determined that petitioner failed to report (1) IRA distributions of $2,087 and $319 and (2) qualified dividends of $179 and $201, respectively. Also for 2006 and 2007 respondent determined that petitioner was liable for the 10-percent additional tax under sec. 72(t) on early distributions from a qualified retirement plan.

(continued...)

Accordingly, those adjustments are deemed to be conceded. See Rule 34(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); McNeil v. Commissioner, T.C. Memo. 2011-150 n.3 (issues not raised on brief or at trial are deemed conceded).

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

Petitioner resided in the State of Minnesota when the petition was filed.

In or about 1988 petitioner moved to Minnesota and since then has resided and worked in the metropolitan Minneapolis-St. Paul area. During 2006 and 2007, the taxable years in issue, petitioner worked full time as a vice principal at a high school in Minneapolis, earning $94,082 in 2006 and $102,748 in 2007.

Prior to moving to Minnesota, petitioner lived in Kansas City, Missouri, where she grew up. Much, if not most, of her

---

[2](...continued)
Additionally for 2007 respondent determined that petitioner failed to report interest income of $509. Finally, respondent partially disallowed itemized deductions claimed by petitioner on Schedules A, Itemized Deductions, for charitable contributions in 2006 and 2007. (Certain of the foregoing adjustments served to increase petitioner's adjusted gross income, thereby increasing the 2-percent floor on miscellaneous itemized deductions, see sec. 67, and hence decreasing the allowable amounts, but this was a purely mechanical matter.)

family remains there.  Specifically during 2006 and 2007, petitioner's parents lived in the Kansas City area, along with three of her four siblings and "tons" of relatives; petitioner also has lifelong friends there.

While living in the Kansas City area, petitioner purchased a single-family house (Kansas City house) in the early or mid-1980s and lived in it until she relocated to Minnesota.  Although it has a Kansas City mailing address, the house is located outside the city limits, within a rural subdivision southwest of the Kansas City airport in Platte County.  The Kansas City house is described by the county assessor as a one-story residence built in 1972 having a stud frame with a total floor area of 1,008 square feet, a basement garage, and an appraised value as of May 15, 2010, of $91,583.

Petitioner held onto the Kansas City house when she relocated to Minnesota, and she continues to own it to this day. However, she has not made personal use of it since moving. Rather, after she relocated, petitioner rented the Kansas City house to various tenants through 2004 or 2005.  Since then the house has not been rented.  Petitioner attributes her failure to rent the property during the last 6 or 7 years to a number of factors, including the economy ("I think the economy was getting a little bit difficult, and it became a little bit hard to rent"), the property's location ("there's no bus line around

there and it's rural and people don't really want to be there"), and the disinclination of realtors to accept a listing for the property ("the realtors, they say that it's really hard to lease out, too").

Petitioner has never listed the Kansas City house for sale. However, on one occasion she did speak with a realtor and concluded that the appreciation of the house over the years since her relocation to Minnesota was such that its sale would yield a handsome gain.

During 2006 and 2007, petitioner traveled from Minnesota to Kansas City several times a year, a round-trip distance of some 890 miles. In Kansas City, petitioner would stay with her mother, as the Kansas City house was unfurnished. When in the area, petitioner would post flyers advertising the house for rent; at other times, petitioner might arrange for flyers to be posted.

Petitioner filed Forms 1040, U.S. Individual Income Tax Return, for 2006 and 2007 and attached to each of those returns a Schedule E, Supplemental Income and Loss, in respect of the Kansas City house. Without regard to the Schedules E, petitioner reported adjusted gross income of $95,968 for 2006 and $104,899 and 2007. Neither the Schedule E for 2006 nor the Schedule E for 2007 reported any rents received. However, both Schedules E

claimed losses, attributable to a variety of expenses and depreciation, as follows:

|  | 2006 | 2007 |
|---|---|---|
| Expenses | | |
| advertising | $    168 | $    175 |
| auto/travel | 2,003 | 1,746 |
| cleaning/ | | |
| maintenance | 975 | 560 |
| insurance | 700 | 710 |
| mortgage interest | 3,042 | 3,400 |
| taxes | 935 | 935 |
| utilities | 1,460 | 1,475 |
| "lodging in 4 day" | 1,210 | 1,215 |
| "meals at half" | 462 | 486 |
| | 10,955 | 10,702 |
| Depreciation | 1,974 | 1,974 |
| Loss | $12,929 | $12,676 |

Petitioner's returns for 2006 and 2007 were prepared by a tax professional.

In the notice of deficiency, respondent disallowed the claimed rental losses on the basis that:  (1) The Kansas City house was not held for the production of income; (2) the losses resulted from a passive activity; and (3) the losses lacked substantiation.  However, respondent did allow the deductions claimed for real estate taxes and mortgage interest, but those deductions were recharacterized as itemized deductions allowable only on Schedules A.[3]

---

[3]  For 2006, respondent allowed mortgage interest in respect of the Kansas City house of $3,464, an amount greater than that claimed by petitioner on her return.

## Discussion

### I. Burden of Proof

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed to be correct, and the taxpayer bears the burden of showing that those determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner has neither alleged that section 7491(a) applies, nor has she established her compliance with its requirements. Accordingly, petitioner bears the burden of proof. See Rule 142(a); Welch v. Helvering, supra at 115.

### II. Deductibility of Claimed Rental Losses

#### A. Section 212

Respondent contends that petitioner did not hold the Kansas City house for production of income in 2006 and 2007, suggesting that petitioner held the property instead for personal reasons related to the presence of family and friends in the area and the desire to eventually retire there. In contrast, petitioner insists that after relocating some 22 years ago she is a Minnesotan and does not presently contemplate returning to the Kansas City area upon retirement. Further, given that the Kansas City house remains unfurnished, petitioner contends that she had no economic reason not to try to rent the property.

In the case of an individual, section 212 allows as a deduction all ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. Sec. 212(1) and (2). For purposes of this section, the term "income" includes not only income of the current year but also income that may be realized in a subsequent year. Sec. 1.212-1(b), Income Tax Regs.; see Bradley v. Commissioner, T.C. Memo. 1998-170 ("The term 'held for the production of income' includes held for appreciation in value"). "[O]rdinary and necessary expenses paid or incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year". Sec. 1.212-1(b), Income Tax Regs. The fact that a building may have been formerly held by the taxpayer for use as a home is no bar to the deductibility of ordinary and necessary expenses if the property is subsequently converted and held for production of income. Murphy v. Commissioner, T.C. Memo. 1993-292; sec. 1.212-1(h), Income Tax Regs.

In the instant case, the record establishes that petitioner converted the Kansas City house from personal use to property held for production of income when she relocated to Minnesota around 1988. At that time, and through 2004 or 2005, petitioner

rented the property to various tenants at various times.  Since 2005 petitioner has not derived any rental income; however, given the property's postconversion appreciation, the possibility of gain upon sale distinctly existed in 2006 and 2007.

It may be that an abandonment by petitioner of any meaningful attempt to rent the Kansas City house, coupled with the collapse of the real estate market, might negate a finding for some future year that the property was held for production of income.  But for 2006 and 2007 the record supports such a finding, and we so hold.

B.  <u>Section 469</u>

The fact that we reject respondent's section 212 determination does not end our inquiry, as respondent also relies on section 469.  Accordingly, we turn now to that section.

Section 469 generally disallows for the taxable year any passive activity loss.  Sec. 469(a).  A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A passive activity is any trade or business in which the taxpayer does not materially participate, sec. 469(c)(1), or to the extent provided in regulations, any activity with respect to which expenses are allowable as a deduction under section 212, sec. 469(c)(6)(B). Rental activity is generally treated as a <u>per</u> <u>se</u> passive activity

regardless of whether the taxpayer materially participates.  Sec.
469(c)(2), (4).

There are two principal exceptions to the general rule that
rental activities are per se passive activities.

### (1) Real Estate Professional

The first exception to the general rule is found in section
469(c)(7).  Under that section, the rental activities of
taxpayers in real property trades or businesses (so-called real
estate professionals) are not treated as per se passive
activities but rather as trade or business activities, subject to
the material participation requirements of section 469(c)(1).
Sec. 469(c)(7); see also sec. 1.469-9(e)(1), Income Tax Regs.

A taxpayer qualifies as a real estate professional and is
not engaged in a passive activity if:

> (i) more than one-half of the personal services
> performed in trades or businesses by the taxpayer
> during such taxable year are performed in real property
> trades or businesses in which the taxpayer materially
> participates, and

> (ii) such taxpayer performs more than 750 hours of
> services during the taxable year in real property
> trades or businesses in which the taxpayer materially
> participates.

Sec. 469(c)(7)(B).  A taxpayer must satisfy both requirements of
section 469(c)(7)(B) in order to qualify as a real estate
professional.

In the present case, petitioner does not contend that she is
a real estate professional, and the record does not establish

that she is.  For one thing, petitioner was employed in 2006 and 2007 and worked full time as a vice principal at a high school in Minneapolis, earning approximately $100,000 each year.  A trade or business includes being an employee.  Putoma Corp. v. Commissioner, 66 T.C. 652, 673 (1976), affd. 601 F.2d 734 (5th Cir. 1979); Fowler v. Commissioner, T.C. Memo. 2002-223.  Thus, it cannot be said that petitioner devoted more than one-half of her total personal services working hours to the Kansas City house.  See sec. 469(c)(7)(B)(i); Anyika v. Commissioner, T.C. Memo. 2011-69.

Second, there is nothing in the record to support a finding that petitioner satisfied the conjunctive requirement of section 469(c)(7)(B)(ii), i.e., the 750-hour service performance requirement, for each of the years in issue.  Given the fact that petitioner worked full time at what must have been a demanding job as a vice principal of a high school, it seems virtually impossible that she would have had time to devote the equivalent of ninety-four 8-hour days to the Kansas City house.  But we need not presume, because petitioner never alleged that she even maintained a log or a calendar or otherwise kept track of the time devoted to the property, and the law is clear that the regulations do not allow a postevent "ballpark guesstimate" of the time committed to material participation in a rental activity.  Moss v. Commissioner, 135 T.C. 365, 369 (2010).

### (2)  Offset for Rental Real Estate Activities

The second exception, albeit a potentially limited one, to the general rule that rental real estate activities are per se passive activities (and therefore subject to the disallowance rule of section 469(a)) is found in section 469(i).  Thus, a taxpayer who "actively" participates in a rental real estate activity may deduct a maximum loss of $25,000 per year related to the activity.  See sec. 469(i)(1) and (2).  This exception is subject to phaseout when the taxpayer's adjusted gross income (determined without regard to any passive activity loss) exceeds $100,000.  Sec. 469(i)(3).

The active participation standard can be satisfied without regular, continuous, and substantial involvement in an activity; the standard is satisfied if the taxpayer participates in a significant and bona fide sense in making management decisions (such as approving new tenants, deciding on rental terms, approving capital expenditures) or arranging for others to provide services such as repairs.  Madler v. Commissioner, T.C. Memo. 1998-112.

In the instant case, it is clear that petitioner owns the Kansas City house and that she is the one who is not only responsible for making all management decisions but who in fact makes such decisions.  We therefore find that petitioner satisfied the active participation standard in 2006 and 2007 and

is therefore entitled to offset her nonpassive income for 2006 and 2007 by her <u>substantiated</u> rental losses, subject to the phaseout limitation (potentially applicable only in 2007).

C.  <u>Substantiation</u>

Finally, insofar as the deductibility of the claimed rental losses is concerned, we turn to the matter of substantiation. Here respondent concedes that petitioner substantiated the payment of mortgage interest of $3,464 and $3,400 for 2006 and 2007, respectively, and real estate taxes of $935 for each year.[4] We turn, therefore, to the remaining deductions, all of which are disputed.

We begin by observing that if, in the absence of required records, a taxpayer provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to adequately substantiate the amount of the deduction to which he or she is otherwise entitled, the Court may estimate the amount of such expense and allow the deduction to that extent. <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930). However, the Court may bear heavily against the taxpayer, whose inexactitude is of his or her own making. <u>Id.</u>  Before doing so, we must have some basis upon which an estimate may be made.

_____

[4]  Respondent did not concede that those deductions are allowable on Schedule E, but our analysis above makes clear that all deductions allowable in respect of the Kansas City house properly reside on Schedule E and not on Schedule A.

- 14 -

Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  Without such a basis, any allowance would amount to unguided largesse.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Notwithstanding the foregoing, in the case of certain expenses, section 274(d) expressly overrides the so-called Cohan doctrine.  Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Specifically, and as pertinent herein, section 274(d) provides that no deduction is allowable for traveling expenses (including meals and lodging while away from home) or with respect to listed property such as a passenger automobile, see sec. 280F(d)(4)(A)(i), unless the deduction is substantiated in accordance with the strict substantiation requirements of section 274(d) and the regulations promulgated thereunder.

In the instant case, the documentary evidence regarding the disputed deductions is relatively scant.  At trial, petitioner testified that she kept her tax records in the basement of her home in Minnesota and that the basement was flooded on three separate occasions, once when a sump pump failed, once when her hot water tank failed, and once after "a big storm", which "soaked" certain of her records, prompting her to throw them out. However, it remains unclear why petitioner could not have reconstructed at least some of her records by contacting third-

party payees, such as insurance and utility companies.[5]  Indeed, at trial, petitioner did not testify that she made serious attempts to do so.

Insofar as utilities are concerned, the Kansas City house was not occupied during 2005 and 2006, and it was located in a rural area.  It is not clear from the record what utilities may have been necessary and whether, if the house utilized a well and a septic field, utilities expenses such as water and sewer charges would have even been incurred.  On the other hand, given weather extremes in the midcontinent, the Kansas City house would have needed some source of power for heat during the winter and for other essential requirements.  In the absence of adequate records, which should have been easily obtainable from third-party payees, we allow $1,000 for utilities expenses for each year.

Insofar as insurance is concerned, the Kansas City house was mortgaged, and the mortgagee would undoubtedly have required some form of fire and casualty insurance.  In the absence of adequate records, which should have been easily obtainable from third-party payees, we allow $500 for each year.

As just mentioned, the Kansas City house was not occupied and would not therefore have required much care insofar as

---

[5]  It should be recalled that the Schedules E listed deductions for insurance and utilities expenses for both 2006 and 2007.

cleaning was concerned.  But the grass did need to be cut and other such maintenance performed.  In the absence of adequate records, we allow $500 for each year.

Petitioner made an effort to rent the Kansas City house by posting flyers (or having flyers posted) in the area.  In the absence of adequate records, we allow $100 for advertising expenses for each year.

Regarding the deduction for "lodging in 4 day", petitioner offered four "Petty Cash" form receipts, each dated "2006" without further specification and containing only the word "Lodging" without further description.  None of these "receipts" is signed; and each is for some even multiple of $100, e.g., $300.  Although we accept petitioner's testimony that she stayed with her mother when in Kansas City, we question whether petitioner was charged by her mother for doing so and we most certainly do not accept the "receipts" as probative of any deductible expense.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Diaz v. Commissioner, 58 T.C. 560, 564 (1972); Kropp v. Commissioner, T.C. Memo. 2000-148.  In short, we are not convinced that any amounts given by petitioner to her mother were motivated by other than love and affection.  Accordingly, we allow nothing for lodging expenses.

Insofar as depreciation is concerned, the record is silent regarding petitioner's basis in the Kansas City house or its fair

market value upon conversion from personal use to production-of-income use.  See <u>Halle v. Commissioner</u>, T.C. Memo. 1996-116 (basis of property converted from personal use is the lesser of adjusted basis or fair market value on the date of conversion). Lacking any evidence upon which to decide the amount of an appropriate allowance, an estimate on our part would constitute a sheer guess and therefore be proscribed largesse.  See <u>Williams v. United States</u>, <u>supra</u> at 560; <u>Vanicek v. Commissioner</u>, <u>supra</u> at 743; see also Rule 143(c) (statements in briefs do not constitute evidence).

Finally, we consider the expenses claimed for auto, travel, and meals.  We accept the fact that it was prudent to inspect the Kansas City house from time to time and to address any issues that ownership of property inevitably engenders.  However, there was obviously also a personal dimension to petitioner's trips to Kansas City, and it is not possible to decide whether a particular trip was principally personal or investment related. But such quandary is one reason why the heightened substantiation requirements of section 274(d) exist.  In the absence of the records that such section demands, we have no discretion to make an allowance as much as we might wish to.

Further, if we credit petitioner's claim regarding the repeated flooding of her basement, the law is clear that a taxpayer must still (1) first demonstrate that the taxpayer

maintained records during the years in issue that were sufficient to meet the strict substantiation requirements of section 274(d) for travel and automobile use and then (2) reasonably and creditably reconstruct those records through secondary evidence to show claimed expenditures and use. Boyd v. Commissioner, 122 T.C. 305, 320 (2004); sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985); see Gizzi v. Commissioner, 65 T.C. 342, 345 (1975); Fernandez v. Commissioner, T.C. Memo. 2011-216; Davis v. Commissioner, T.C. Memo. 2006-272.

At trial, petitioner never testified about what type of required records (e.g., account book, diary, log, or trip sheets) that she might have maintained; we are therefore unable to make a finding that she satisfied the heightened substantiation requirements of section 274(d) prior to any flood. And the absence of a reasonable and creditable reconstruction of expenditures and use further precludes us from making any allowance if we were so inclined.

In sum, petitioner is entitled to deduct only the following expenses on her Schedules E for the years in issue:

| Expenses | 2006 | 2007 |
|---|---|---|
| advertising | $ 100 | $ 100 |
| cleaning/ maintenance | 500 | 500 |
| insurance | 500 | 500 |
| mortgage interest | 3,464 | 3,400 |
| taxes | 935 | 935 |
| utilities | 1,000 | 1,000 |
| | $6,499 | $6,435 |

## III. Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a penalty equal to 20 percent of the amount of any underpayment attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The taxpayer bears the burden of proving that he or she acted with reasonable cause and

in good faith. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. at 115; <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001); see sec. 7491(c) (regarding the Commissioner's burden of production).

Petitioner did not address the accuracy-related penalty issue either at trial or on brief (nor did she raise it in her petition), implying only that in the absence of an underpayment there can be no penalty. But, as mentioned much earlier, see <u>supra</u> note 2 and associated text, petitioner is deemed to have conceded certain adjustments in the deficiency notice that she never sought to challenge. Clearly as to the underpayments attributable to those adjustments we conclude that respondent has carried his burden of production and that petitioner has failed to satisfy her burden of proof.

As to the underpayments attributable to the Schedule E adjustments, we likewise conclude that imposition of the accuracy-related penalties is warranted. Here petitioner's reticence in addressing the matter directly weighs heavily against her, as does not merely her lack of substantiating records but her failure to seriously attempt to reasonably and creditably reconstruct essential records through secondary evidence.

## Conclusion

We have considered all of the arguments made by the parties and, to the extent that we have not specifically addressed any of

those arguments, we conclude that they are moot, irrelevant, or without merit.

To give effect to the foregoing,

<u>Decision will be entered under Rule 155</u>.